May it please the court. My name is Elisa Long. I'm an assistant federal public defender in the Western District of Pennsylvania and I represent Donald Solomon. I'd like to reserve three minutes for rebuttal. Granted. The application of the cross-reference in 2C1.1 more than tripled Mr. Solomon's guideline reach. The question before this court is looking at the language of the cross-reference, giving meaning to each word, and giving consideration to the reasons behind the use of cross-references at all in the guidelines. Does it apply here? The cross-reference provides that if the extortion offense was committed for the purpose of facilitating another criminal offense, apply the guideline range applicable to conspiracy to commit that other criminal offense. Isn't that pretty straightforward? I mean, don't we, aren't those the facts in this case? I don't think it's straightforward because here there is no other criminal offense. The offense here is extortion. That's why Mr. Solomon was involved. He accepted money. What the government manufactured was a transaction, a drug transaction, two different drug transactions, neither of which could have been factually possible or legally possible. Under the circumstances, they could not have been a criminal offense. What case requires that the facilitation of the crime bring with it a completed crime? It's not our position that it be a completed crime, Your Honor. It's that the crime could actually have occurred. The conduct constituted what could have been a criminal offense. But isn't the word purpose of great significance here? It was the purpose of Mr. Solomon to facilitate a drug crime. Whether that crime could have taken place is irrelevant in light of the language used in the statute, particularly the word purpose. I don't think it makes it irrelevant. I think it adds a layer to this. But I still think that a criminal offense has to be just that. It's not defined in the guidelines, but it has to be something that conduct that could be a criminal offense. All right. And his purpose was to facilitate what he thought was going to be a drug transaction. Now, whether that could have been or could not have been, it's his purpose that is significant here. Wasn't his purpose to facilitate such a drug transaction? Isn't that why he was providing security? Well, his purpose was to obtain money. I mean, that was really his purpose. The purpose that the law enforcement agents or the undercover agents involved was purportedly to engage in a drug transaction and have Mr. Solomon provide protection for that drug transaction. But there still has to be, if the commission wanted, the sentencing commission wanted to allow for the use of the cross-reference in situations like this, it could have included a note or commentary to that effect saying it doesn't matter that there is no other criminal offense. It doesn't matter that no other criminal offense is possible, that it could be entirely fictitious. It didn't do that. Or they could have used the language for the commission of another offense instead of for the purpose of facilitating. Well, the language is... They would have put it in the situation that you're talking about where, in fact, there was a commission of another offense, but the language here is not that. The language does include it's for the purpose of facilitating the commission of another criminal offense. So if we're going to give each one of these words meaning, it certainly contemplates the commission of another criminal offense or that another criminal offense could have been committed here had these not been drug enforced, you know, all law enforcement agents or had these actually been real, real drugs. And I think just to one of the cases that the court relies upon, United States versus Ruiz, I think gets distracted by whether or not the offense actually has to be committed. That's not the position. The position is that it could have been an offense. It could have been the conduct would have constituted an offense. Mr. Salma doesn't have to be charged with that offense, doesn't have to be convicted of that offense, but it has to be a real offense that factually or legally could have occurred. And one of the things that informs this interpretation is the whole reason for the use of cross references is to get to the real offense. It's to say the charged offense doesn't really capture all the harms that are associated with the conduct here. So you're moving away from the charged offense, which is the 2C1.1 guideline to the cross reference, but the cross reference doesn't actually provide the real offense. It doesn't capture the real harm because there is no real harm here. This was entirely manufactured by the government. There were no drugs. There was no conspiracy. Is your complaint more with the way the guidelines are written here? I mean, obviously the commission decided that it was important to move to another category under these circumstances. I mean, they could have decided not to do that, but they made that decision. Well, the example that the commission provides, some insight that we have is that it says, if a law enforcement officer accepts a bribe to assist in the smuggling of or to allow the smuggling of cocaine, that's one of the examples in the commentary to 2C1.1, then the cross reference would apply, and you would apply the cross reference that is applicable to conspiracy to import cocaine. So that's the insight. I don't have a problem with the way the guideline is written. I do think it is confusing in that there are many layers, and if we're to strictly construe it, and if we're to use the rule of lenity here, where it's not defined, then it should be defined in the way that I'm suggesting, that there has to actually be the potential for a real offense to occur here. Yeah, I think you have, my own view is you have a stronger argument on the abuse of trust fraud. It's a cleaner argument. I acknowledge that, Your Honor. What's the effect of that application note 6 to 2C1.1? Well, I think, I mean, just looking at, even if there had been no amendment prior to the language that exists now, looking at it, it is a blanket prohibition on the application of the abuse of trust enhancement. It's unequivocal. There are no exceptions. It's in the note itself. If you look at the, if the plain language isn't enough for the court, if you look at the legislative history, language that expressly provided for an exception for the use of a cross-reference saying, if you use a cross-reference, you can apply the abuse of trust, that was eliminated in two different places in the guidelines. And the cases relied upon by the court and the district court itself give really short shrift to that amendment, suggest that it was meaningless, that even though the statute, the guideline was amended in two different places, the court need not give it any significance. And that is certainly, as I outlined in my brief, contrary to the way that we construe statutes and contrary to the way that we read guidelines. What's your response to the government's argument that that doesn't apply to the conspiracy guideline? It applies to 2C1.1, and presumably because the abuse of trust, the two points is already baked into that guideline, but it's not already baked into the conspiracy guideline. Well, that's, I think, going beyond the plain language of what the application note six says, which is it does not apply, it's a blanket prohibition, to suggest, well, maybe they didn't really mean that because, you know, this abuse of trust is already accounted for in 2C1.1, and that's why it doesn't apply there. I mean, I don't think it's correct to read into the guideline language that is not there, especially when that language was explicitly omitted by the commission when it amended the guideline, Isn't the abuse of trust element present in the 2C1.1 offense? Only if the person, well, 2C1.1 also applies to people who are giving bribes to public officials or who are not in positions of trust, so it's not always included. But in this case, obviously, Mr. Solomon was in a position of trust, so it was included. His base offense level was higher because he was a public official. So to add another increase because of that in that situation, but that is not the situation when you're applying the drug guidelines. Right, but you wouldn't get to the drug guidelines unless you use the cross-reference, right? And then you only use the drug guideline if it's higher than what you would have gotten with the application of 2C1.1 subsections A and B. But I think either way, it gets away from what the plain language is in Application Note 6 and the elimination of language that created an exception for the cross-reference. That language is no longer there. The commission took it out in two different places, and we have to give meaning to that. We have to give meaning to the language that's there now, and we have to look at the history as to when it was there before and is no longer there. I can't remember, did the district judge specifically write on or say something about why she did not apply it in the way that you wanted? Why she did not apply the abuse of trust? No, why she did. Yes, she said that once you move to the cross-reference, then essentially the 2C1.1 is irrelevant. But I do think that because of that express prohibition, it's not irrelevant. So she never really grappled with the argument that you're making? She did. I mean, the argument was made that there were amendments in 2004 and that they removed language that did allow the application. But she didn't really do a detailed analysis of why. She just said, I believe, I think because of what Judge Roth alluded to earlier, because 2C1.1 includes an enhancement essentially for abuse of trust, that's why it wouldn't apply there. But once you move to the drug guideline, you're in a different territory. But it's our position that it doesn't matter. That blanket prohibition applies to all cases. It doesn't say, like it did before, only to cases under subsections A and B. It includes the cross-reference. I also just wanted to point out there are a few cases that the government and the court rely upon that don't really recognize the real offense versus charged offense and also don't recognize the policies and the guidelines as informing this discussion or this decision about whether or not the cross-reference should apply. And also that there is no crime of conspiracy to commit a conspiracy. And in Ruiz, which is the only really published case on this issue, that's what they sort of gloss over the fact that the underlying offense the court finds to be conspiracy to commit a drug offense. And then the court doesn't really recognize that there really is no guideline applicable to conspiracy to commit a drug trafficking offense. And I think that's significant. Like I said in the beginning, if you're going to give every word in this statute and guideline meaning, we have to give that meaning too, which means there has to be a guideline that the court can go to applicable to conspiracy to commit the underlying offense. Thank you, Ms. Long. We'll hear you on rebuttal. Mr. Eberhardt. Good morning. May it please the Court, Robert Eberhardt from the U.S. Attorney's Office in Pittsburgh for the government in this case. I would like to start, if I might, by pointing out that Mr. Solomon's participation was certainly not construed and manufactured. He had a long history that came to the attention of the FBI of being interested in participating in criminal conduct. In fact, Solomon first came to the FBI's attention due to a drive-by shooting that he asked an individual named Timothy Johnson to engage in. Is this record or is this really relevant to the issues that we have to consider today? I agree, Judge Roth. It isn't relevant to the two issues presented. But if you read the appellant's brief, there's a suggestion that Mr. Solomon is being picked upon and that he was very close to being entrapped. And that's not the case. And I would leave the Court with the record to hopefully agree with me on that. What about Ms. Long's argument about conspiracy to commit a conspiracy? Would you begin by addressing that? Nobody could understand what conspiracy to commit a conspiracy argument was in the district court, and I don't understand it here. What happened in the district court was that the cross-reference applied by the sentencing judge, and the cross-reference focused on the word purpose. And as the prior questions to my opponent suggest, that word is very important in the guidelines. I think this case is – Right, but its purpose of facilitating the commission of another criminal offense. And as I understand Ms. Long's argument, there was a factual or legal impossibility that another offense could be committed. We do rely on the Fifth Circuit's decision in Ruiz for the analysis of that, as did the district court judge. And I would point out that the Fifth Circuit's analysis, which Judge Conte in the district court found to be a worthy analysis, focuses on the fact that the purpose is not necessarily to have another offense be charged, but to have another offense be potentially committed. So the purpose does not require that an actual crime be committed in order for the purpose to be carried out consistent with what the guidelines suggest. I would point out that this case really focuses on one of the very basic policies of the sentencing guidelines. And my opponent has sort of run over that in her brief by pointing out and arguing that real offense and charged offense are being mixed up in this case. Well, the guidelines policy statement very specifically says that cross-references are a direct way to get a real offense and a charged offense approach to coalesce. And if you read then-Judge Pryor's Hofstra Law Review article, you see that the Sentencing Guidelines Commission was initially focusing on real offense guidelines and realized that the necessity for real offense and charged offense co-mingling was the only way to go to get a fair approach to sentencing guidelines. And Judge Becker recognized that several years ago when he said that in the Baird case that guidelines are at bottom a modified real offense system. And this court in the Fisher case not too long ago recognized that also. I would suggest that what the appellant is trying to argue against is that he wants a charged offense system to apply to him and to have the cross-reference be negated by focusing on a charged offense approach when in reality the Sentencing Guidelines and the Commission said we wanted to go in the direction of a real offense guideline. We found some difficulties with that. So we coalesce the real offense and charged offense system. And things like the cross-reference are intended to assist us in that. And I would point out additionally that there are a number of other crimes that could have and potentially were chargeable to Mr. Solomon that weren't charged. He solicited individuals to get tried by shootings and things like that. Yeah, right, but we can't. That's a different situation. They're different facts. Let's assume that you prevail on the first issue. What about the abuse of trust? How do you get around the plain language and the amendment to Note 6? Well, our argument is consistent with the Fifth Circuit again in Carr, which essentially said once you move from 2C1.1 to 2D to have the cross-reference apply, Mr. Solomon is not being sentenced under 2C1.1. He's being sentenced for the crime for which the cross-reference applies. How do we deal with the language expressly provides otherwise? Expressly provides otherwise? Unless expressly provides otherwise? Well, the guideline of the conspiracy to commit the drug offense is the sentence that is the guideline that was applied in sentencing Mr. Solomon. And so 2C1.1 was no longer applicable to his case. How do we know that? How do we ever leave 2C1.1? By the cross-reference. We only get to the cross-reference by applying 2C1.1, correct? That part of 2C1.1, which essentially – You like the part of 2C1.1 that refers us to 2D, but you want to disregard the part of 2C1.1 that says we can't apply the abusive trust enhancement. Well, the 2D sentencing does not include any application of an abusive trust, which is inherently a part of what the chief of police in East Washington Township in Washington County, Pennsylvania, was doing. As argued in the lower court, he was selling his badge. He said he was the best money provider. All right, all right. You've just pivoted back to the facts that make him look like a bad guy,  because as I read 2C1.1, that has to apply in order for you to get to the cross-reference, correct? Correct. Then why does not its own application, Note 6, also apply? Because the real offense approach to the guidelines then kicks in because of the cross-reference. And the real approach, real offense approach, therefore takes us into the conspiracy to commit a drug trafficking offense. And the application, Note 6, is no longer applicable. What tells us that? What case tells us that? Well, we rely on the Fifth Circuit decision in Carr, which analyzed that. Let me ask you a question. Once you apply 2D and go to the drug offense, do you start computing the guidelines from the beginning all over again? Yes. And you're computing them, and then under 2D as opposed to under, there is no further computation under 2C. Right. There is no longer a 2C1.1 application, because the guidelines are now for base offense are calculated on the basis of the 2D. So the conspiracy to commit the drug traffic offense, which was the real purpose of Mr. Solomon's participation, is now the very base and the whole analysis of the appropriate guideline to be applicable to his case. But how do we know that 2D is the one that we should apply, the trial judge should apply instead of 2C1.1? Well, because the cross-reference takes us to that, and the purpose, which is a factual. Which one? If you're the trial judge and you need to decide, do I apply 2C1.1 or 2D, the answer to that question is determined by what facts? The facts of the case. And the real offense? The real offense. I thought it was which guideline is higher. Doesn't it say? It does say that, yes. The higher? Right. Well, we only know whether 2D, whether D is higher than 2C1.1. After you've done the real offense analysis and determined what the purpose of the conduct was, you get to D. And at the time we measure those two for purposes of comparison to figure out which one to apply, 2C1.1 is still operative, is it not? It's part of the analysis because it has to be compared. And since it's operative, we apply application note six, which says do not apply the abuse of trust. No, once you determine that the higher guideline is in D, then 2C1.1 no longer applies. It's no longer going to be part of the probation officer's calculation of the base offense level or any enhancements that would be applicable to the next chapter. Even if you were inclined to accept your argument that you just made, how do we deal with the amendment? I mean, you're inviting us to treat as nugatory the commission's removal of that language that used to say accept with respect to the cross-reference, are you not? Well, the language that was no longer deemed necessary by the sentencing commission, I suggest, was because another guideline was now going to be applicable. And therefore, when 2C1.1 was no longer applicable, the excess wording in application six was not necessary because the sentencing judge was not required to even go back and read application six. That's our view, that's the view of the Fifth Circuit, and that's the analysis I think that's appropriate. I would suggest that the important analysis here is recognizing that the sentencing commission wanted real offense to be the primary motivator for sentencing, but recognize that charge offenses are sometimes important to get to the point where you have a beginning of a structure of a sentencing that is appropriate to a real offense. And they very specifically in the introduction and the policy statement in the guideline manual tell sentencing judges, we're interested in seeing real offense sentencings. And in order to do that, we recognize that you have to co-mingle charge offense principles with some real offense principles. And in this case, the piece of trust enhancement was certainly applicable to a chief of police who is guarding and facilitating several drug offenses. In fact, he wanted to do more. I would suggest that the application six is not applicable from the very start of the analysis under 2C1.1A1. And so when the determination is made that there's a higher guideline that is applicable because of the purpose of the Hobbs Act know whether we went by a cross reference to a different other than D. Let me give you a counterfactual to test that theory. Let's assume here under 2C1.1 he was at a 14, correct? Right. I want you to assume for a minute that 2D put him at a 14. At the time we measure, which applies? Or let me ask it this way. At the time we measure, if 2D were a 14 instead of a 32, at the time we do the measurement, do we apply the abuse of trust to 2D in order to take it from a 14 to a 16? If the determination is made that the sentence has to be imposed under 2C1.1, then I would say that it would be applicable, that application note six would be applicable. So we wouldn't apply it then? You're saying don't apply the abuse of trust? Your hypothetical suggests to me that the cross reference references another offense that's of equal base offense as 2C1.1. Well, it is equal if you don't apply the abuse of trust as application note six dictates, but it's greater if you want the abuse of trust in your case to be applied. So why wouldn't it be applied in my hypothetical and render 2D a higher guideline? Because it's taken out of the 2C1.1 once the cross reference is fully applied. What I understand you to be saying is if the cross reference is applied to an offense where the base offense level is equal to the 2C1.1 base offense level, then under the wording of 2C1.1, I think it's A1, then you wouldn't go to D. You would stay in 2C1.1. And if you stay in 2C1.1 and you've already done the calculation based on, I mean, 2C1.1 starts, I think, at 12 and goes to 14 if it involves what is the equivalent of abuse of trust. So there's a two-point addition made within 2C1.1 if only 2C1.1 applies. But once the cross reference takes you to another offense, that's why I'm arguing basically. The key is that we're transported out of 2C1.1. Right. And then you don't drag all of them. Then you would concede if you're not totally transported out of it and 2C1.1 continues to have some operation, then we should apply application. If you're still in there. But in this case, you're not in there. You're at the D. You've moved out of that. I would very strongly emphasize the fact that this is very consistent with a real offense versus charged offense approach of the sentencing guidelines. The reality is that you have a chief of police who is engaged in drug trafficking, protecting drug trafficking, and that's the D is the offense that was the purpose of his conduct. And therefore, you're out of 2C1.1. All right. Thank you, Mr. Eberhardt. Thank you very much. I understand your position. Rebuttal, Ms. Long. One of the reasons we know that application note six still applies, even if we go to the cross-reference, is because of the context in which application note six appears. There are six application notes, I'm sorry, six or seven application notes for 2C1.1. The first four deal specifically with particular subsections. And they say, you know, subsection A, subsection B. The last two, which include this blanket prohibition on the abuse of trust and an upward departure provision, contain no such limiting language. So we should look at that and assume that that means it applies to the entire guideline section, not just a specific here, as the government is arguing. It's as though what the government is saying, that application note six specifically says, this only applies to subsections A and B and not the cross-reference. But that's not the language. And if you look at the application note in the context, you would see that that is the correct way to look at that. And certainly the government wouldn't argue that the court couldn't impose an upward departure provision here if they believed even the cross-reference, the guideline range achieved by the cross-reference was inadequate. They certainly would be arguing that they could move for an upward departure provision, that the application note that follows the blanket prohibition on the abuse of trust enhancement, providing for the upward departure provision, isn't limited to just subsections A and B of 2C1.1, if that makes sense. The other thing is that – What about the definitional provision in 1B1.5? I think that provides that you do consider chapters two and three when you use a cross-reference. And that is explicitly provided for in the resulting offense level in 2C1.1 includes chapters two and chapters three, except where expressly provided. And it's our position, as we said in the brief, that this is expressly providing otherwise, that you are not to apply 2C1.1 – I'm sorry, not to apply the abuse of trust enhancement, period, whether you're in the cross-reference or not. Thank you. Thank you, Ms. Long. The case was very well briefed and argued. The court will take the matter under advisement.